# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

FRANCIS WINCHESTER                              CIVIL ACTION NO. 06-0641

VS.                                             SECTION P

WARDEN, AVOYELLES CORR. CENTER                  JUDGE MELANÇON

                                                MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of *habeas corpus*, filed by *pro se* petitioner, Francis Winchester, pursuant to 28 U.S.C. § 2254.  The  petition was  received and filed in this court on April 6, 2006.  Petitioner is currently confined in the Avoyelles Correctional Institution.  He names Warden Cooper as the respondent. Petitioner challenges his state court convictions for attempted armed robbery (two counts), aggravated burglary and possession of a firearm by a convicted felon.  Petitioner pled guilty to those crimes on July 29, 2002 in the Sixteenth Judicial District Court of Louisiana for St. Mary Parish.

This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner's claims are

1

procedurally defaulted, and alternatively, that this petition be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

## FACTUAL AND PROCEDURAL HISTORY

**The Plea (*State of Louisiana v. Francis Winchester*, No. 01-157,877)**

On July 29, 2002, petitioner pled guilty to two counts of attempted armed robbery, aggravated burglary, and possession of a firearm by a convicted felon in the Sixteenth Judicial District Court of Louisiana for St. Mary Parish, under Docket Number 01-157,877.

Prior to accepting petitioner's guilty plea, the trial judge defined attempted armed robbery, aggravated burglary and possession of a firearm by a convicted felon, as well as the potential maximum penalty for each crime, no more than forty-nine and one-half years imprisonment,  not less than one nor more than thirty years, and not less than ten nor more than fifteen years without benefit of probation, parole, or suspension of sentence, respectively.  [doc. 1-5, p. 56-60].  Petitioner acknowledged both his understanding of the crimes with which he had been charged and the possible penalties that he could receive for those crimes. [*Id*.].

The court also inquired as to petitioner's understanding of his plea agreement with the State as follows:

2

> The Court:  "Your agreement with the State is that you're going to enter a plea to attempted armed robbery, two counts, aggravated-burglary, and possession of a firearm by a convicted felon. The State would dismiss one count of attempted aggravated burglary and they would not multiple bill you. Any sentence we would give you would run concurrent with the sentence that you're on parole for in Docket #98-150,349, which I understand is an eight year sentence.  Is that your understanding of the plea agreement?"
>
> Winchester:  "Yes, sir, that's my understanding."

[*Id*. at 53-54].  Moreover, prior to accepting petitioner's guilty plea, the judge again advised petitioner of the consequences should the court accept his guilty plea stating, "You authorize the Court to sentence you, Mr. Winchester, up to the maximum allowed by each of those statutes. Do you understand that?"  To which petitioner responded, "Yes, sir." [*Id*.  at 66].  After advising petitioner of the rights he would waive upon acceptance of his guilty plea, and determining petitioner's understanding of the waiver of those rights,  the court accepted petitioner's guilty plea, finding the plea was freely and voluntarily made. [*Id.* at 64-69].  The Court then ordered that a pre-sentence investigation report be made and set a sentencing date thereafter. [*Id*. 69].

**Sentencing**

Petitioner was sentenced on December 5, 2002 to serve 30 years on the aggravated burglary conviction, 30 years without benefit of parole on each of the attempted armed robbery convictions, and 15 years without parole on the possession of a firearm conviction, these sentences to be served concurrently.  However, the court additionally ordered that these sentences run consecutive to "any other sentence presently imposed

3

upon the defendant", presumably, the outstanding eight year sentence imposed under Docket #98-150,349 for simple criminal damage to property and simple burglary, on which petitioner had been released on probation.[1]  [doc. 1-6, p. 23-24].

**Probation Revocation (*State of Louisiana v. Francis D. Winchester*, No. 98-150349)**

On April 11, 2003, petitioner's probation on the simple criminal damage to property and simple burglary convictions under Docket Number 98-150,349 was revoked, and petitioner was ordered to serve the remaining 8 years of his sentence concurrent with the sentences imposed in case number 01-157,877 for armed robbery, aggravated burglary and being a felon in possession of a firearm.  [doc. 1-6,  p. 28-35].[2]

**Application for Post-Conviction Relief seeking Out-of-Time Appeal/Appeal**

On November 14, 2003, petitioner filed an application for state post-conviction relief seeking an out of time appeal with respect to his attempted armed robbery, aggravated burglary and felon in possession convictions. [doc. 1-4, p. 61 – doc. 1-5, p. 8]. Accordingly, on January 28, 2004, petitioner was granted an out-of-time appeal.[3]  [doc. 1-4, p. 59-58].

---

[1] Petitioner's counsel objected and petitioner reserved his right to appeal, after which the court advised that petitioner  "file either a reconsideration for the sentence and/or appeal...." [*Id.* at 25].

[2] Petitioner apparently sought review in both the Louisiana First Circuit Court of Appeals and the Louisiana Supreme Court which ultimately denied review on April 21, 2003. *See State of Louisiana ex rel. Francis Winchester v. State of Louisiana*, 2002-1284 (La. 4/21/2003)

[3] Prior to the trial court's ruling, petitioner apparently filed a writ of mandamus in the Louisiana First Circuit Court of Appeal seeking a ruling on his post-conviction application.  The writ was granted on April 2, 2004, ordering the trial court "to proceed toward disposition of relator's application for postconviction relief, filed November 14, 2003, on or before April 16, 2004." [doc. 1-4, p. 11-12,  *State ex rel. Winchester v. State*, 2004 KW 0218 (La. App. 1st Cir. 4/2/2004)].  The lower court responded by letter dated April 15, 2004 notifying the appellate court that an out-of-time appeal had already been granted on January 30, 2004. [doc. 1-4, p. 17].

4

Petitioner's counseled brief was filed on May 19, 2004. In that brief, counsel argued that petitioner should be re-sentenced to allow his sentence to be served concurrent with the sentence for his prior convictions or be allowed to plead anew. To the extent that the appellate court would limit review of that claim as a result of counsel's failure to file a Motion to Reconsider petitioner's sentence, appellate counsel asserted that this failure constituted deficient performance  [doc. 1-3, p. 1-7]. Petitioner also filed two *pro se* briefs asserting additional assignments of error on June 3, 2004.  Those assignments include the following: (1) that his plea was not knowing and voluntary because he pled guilty pursuant to a plea agreement which stated that his sentence would run concurrent with the sentence imposed for his prior conviction; (2) that his fifteen year sentence imposed for being a felon in possession was illegal; (3) that he was not competent to enter a guilty plea or go to trial; and (4) that his counsel was ineffective because counsel: (a) negotiated a plea agreement that petitioner did not fully comprehend because he understood his sentence would be eight years; (b) failed to obtain the services of an expert witness regarding petitioner's competency, abandoning an insanity defense in favor of a plea agreement; (c) abandoned an intoxication defense. [doc. 1-5, p. 25-43].

The State agreed with petitioner's counseled assignment of error and accordingly, requested that the case be remanded for re-sentencing in accordance with petitioner's plea agreement so that petitioner's sentence be ordered to run concurrent with the time he is serving on his prior offense. [doc. 1-6, p. 57-64].

On December 30, 2004, the Louisiana First Circuit Court of Appeal rendered judgment in  petitioner's out-of-time appeal.[4][5] [doc. 1-4, p. 46-56, *State v. Winchester*, No. 2004-KA-0910 (La. App. 1st  Cir. 12/30/2004), 890 So.2d 37 (unpublished)].  The court found merit in petitioner's counseled and first *pro se* assignment of error.  Accordingly, citing *Santobello v. New York*, 404 U.S. 257, 262-263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), the court vacated petitioner's sentences and remanded the matter for re-sentencing.  The court instructed that petitioner was to "be given the option of demanding specific performance of the plea agreement or the opportunity to request withdrawal of his guilty plea ..."  after contradictory hearing.  Moreover, if the case were to go trial, a different judge was to preside over the proceedings. [*Id.* at  49-50].

The court additionally ruled on petitioner's additional *pro se* Assignment of Errors.  The court found that the bill of information charging petitioner as a felon in possession of a firearm was defective because it failed to allege a prior felony conviction.  However, because petitioner had failed to object to this technical deficiency prior to pleading guilty to the charge, petitioner had waived his right to complain.  Moreover, because the record failed to disclose any prejudice or surprise, any error resulting from

_____

[4]While petitioner's direct appeal was pending, petitioner filed a petition for federal *habeas corpus* relief. That petitioner was dismissed without prejudice on October 6, 2004 because petitioner had not fully exhausted his claims in the Louisiana state courts. *See Winchester v. Warden, Avoyelles Correctional Center*, 6:04-1600 (W.D.La. 2004).

[5] In connection with petitioner's out-of-time appeal, on November 15, 2004, the Louisiana Supreme Court denied petitioner's request for writs. *See State of Louisiana ex rel. Francis Winchester v. State of Louisiana*, 2004-2612 (La. 11/15/2004), 887 So.2d 489. Petitioner has not provided any pleadings associated with this writ application.  Moreover,  since the date of decision pre-dates the opinion of the First Circuit, it does not appear that the writ denial has any relevance herein.

the State's failure to allege petitioner's prior felony conviction was harmless, not necessitating reversal of petitioner's conviction. [*Id.* at 51].   With regard to petitioner's competency claim, after noting that petitioner's motion for a sanity commission alleged only that petitioner was not competent at the time of the offense, not that he lacked capacity to proceed to trial, the court nevertheless found the claim had been waived because petitioner failed to reserve his right to appeal the trial court's adverse ruling finding petitioner competent to proceed to trial.   Moreover, the court found that the transcript of petitioner's plea was sufficient to establish that petitioner was competent at the time he entered his guilty plea. [*Id.* at 52-53].   Finally, citing the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court rejected each of defendant's ineffective assistance of counsel claims on the merits, finding that the decision to abandon an insanity/intoxication defense in favor of accepting a plea agreement was a strategic decision made by both petitioner and his counsel which obviated the need for further evaluation of petitioner's state of mind at the time of commission of the offense, that given petitioner's detailed statement to police immediately following his arrest outlining how petitioner and his friend orchestrated and carried out the crimes and thereby showing petitioner's specific intent to commit the charged offenses, the decision to abandon an insanity or intoxication defense was a reasonable tactical decision which in no way constituted deficient performance, that petitioner's claim that he was misled to believe that his sentences would be capped at eight years was unsupported by the record, and that in light of the trial court's

7

explanation of the maximum penalty for each crime, petitioner had failed to demonstrate any prejudice as a result of counsel's alleged failure to advise petitioner that he could be sentenced to the maximum sentence for each crime. [*Id*. at 53-56].

Almost six months after the Louisiana First Circuit Court of Appeal issued its December 30, 2004 decision, on June 10, 2005, petitioner filed a *pro se* writ application in the Louisiana Supreme Court.[6]  [doc. 1-3, p. 44].  That application was assigned Docket Number 2005-KH-1898. [*Id*.].  In this application, petitioner argued (1) that  his plea was involuntary because he believed that he would be sentenced to only eight years; (2) that the State breached the plea agreement; (3) that he was denied an expert witnesses to testify to his mental state both at the time of the offense and also at the time of petitioner's plea,  and (4) that he received ineffective assistance of counsel because counsel (a) failed to request the assistance of an independent expert witness to determine petitioner's competency to stand trial and enter a valid guilty plea, and (b) failed to file a motion to reconsider petitioner's sentence.[7]  [doc. 1-5, p. 9-13].  The Louisiana Supreme Court denied writs on March 31, 2006, without comment.  [doc. 1-4, p. 1, *State ex rel.*

---

[6]The writ application submitted by petitioner is undated. However, the undersigned received a copy of the application directly from that court.  That application is signed by petitioner on June 10, 2005, the same date that the Louisiana Supreme Court's July 19, 2005 correspondence to petitioner indicates that the pleading was metered.  Thus, the undersigned has given petitioner the benefit of the earlier date. [*See* doc. 1-3, p. 44].

[7] The pleading references the docket number of petitioner's out-of-time direct appeal in the Louisiana First Circuit Court of Appeal, No. 2004-KA-0910.  However, inexplicably, the decision of the Louisiana Supreme Court references the docket number of petitioner's request for mandamus relief in Louisiana First Circuit Court of Appeal seeking a ruling on his post-conviction application, No. 2004-KW-0218, which was granted by the appellate court by decision dated April 2, 2004, ordering the trial court "to proceed toward disposition of relator's application for postconviction relief, filed November 14, 2003, on or before April 16, 2004." *See* fn. 3, *supra*.; doc. 1-4, p. 11-12,  *State ex rel. Winchester v. State*, 2004 KW 0218 (La. App. 1st Cir. 4/2/2004).

*Francis D. Winchester v. State of Louisiana*, 2005-1898 (La. 3/31/2006), 925 So.2d 1898.

**Proceedings on Remand**

On remand in the trial court, during a February 9, 2005 hearing, petitioner advised the court that he wanted to withdraw his guilty plea. [doc. 1-6, p. 67].   Petitioner's court-appointed attorney, Mr. Gary LeGros, advised the court that this decision was against his advice. [*Id.* pp. 67-68].  After further discussion with petitioner and his counsel, the court set petitioner's request to withdraw his guilty plea for contradictory hearing. [*Id.* at 74].

On April 25, 2005, after the court explained that petitioner's plea agreement never called for an eight year total sentence, and that accordingly, if petitioner chose specific performance, the sentence would not be a mere eight years, petitioner again advised the court that he wished to withdraw his guilty plea. [doc. 1-7, p. 7-9].  Because petitioner indicated that he may call the trial judge as a witness, the hearing was again reset. [*Id.* at 8 and 12-13].

On June 3, 2005, petitioner advised the court that he wanted specific performance of his plea agreement. [doc. 1-7, p. 35 and 37].  After waiving the sentencing delays, petitioner was re-sentenced to serve 30 years at hard labor for his aggravated burglary conviction, thirty years without benefit of parole for each of the two attempted armed robbery convictions, and fifteen years without benefit of parole for the firearms conviction, all sentences to run concurrent with each other and concurrent with his previous eight year sentence imposed following the revocation of petitioner's probation. [*Id.* at 43].   Petitioner's oral motion "to vacate the conviction and sentence because the

9

sentence is not according to the plea agreement" and his motion to reconsider his sentence were denied. [*Id*. at 44 and 47].  The Louisiana Appellate Project was appointed to represent petitioner on appeal. [*Id.* at 49].

**Appeal After Remand**

Petitioner again appealed to the Louisiana First Circuit Court of Appeal where the appeal was assigned docket number 2006-KA-0154.[8]  [doc. 1-7, p. 55].  Petitioner's court-appointed appellate counsel argued that petitioner's counsel refused to properly represent petitioner with respect to his request to withdraw his guilty plea, and that the district court failed to afford petitioner a contradictory hearing on that request. Accordingly, petitioner requested that the case be again remanded so that petitioner could be afforded a "meaningful opportunity to request to withdraw his guilty plea."  [doc. 1-7, p. 57-68,   *State v. Winchester*, No. 2006-KA-0154].  Petitioner filed a supplemental *pro se* brief arguing that he received ineffective assistance of counsel in his pursuit to withdraw his guilty plea.  Accordingly, he requested that his convictions and sentences be vacated and that his case be set for trial.  [*Id*., at 69-79].

On September 20, 2006, the Louisiana First Circuit Court of Appeals affirmed all of  petitioner's convictions, affirmed petitioner's sentences for attempted armed robbery (both counts) and aggravated burglary, but vacated petitioner's sentence for possession of

---

[8]Although the trial court had previously orally appointed the Louisiana Appellate Project to represent petitioner on appeal, petitioner filed a *pro se* Motion for Appeal on August 4, 2005 requesting the court to appoint the Louisiana Appellate Project to represent him on appeal.  The trial court granted that Motion on September 9, 2005. [rec. doc. 8, Appx. X].

a firearm by a convicted felon because the trial court had not imposed the mandatory fine required under the statute.   Accordingly, the case was remanded to the trial court for re-sentencing on the firearm conviction.  With respect to petitioner's counseled and *pro se* claims, the court found petitioner's claim that counsel refused to represent him in his request to withdraw his guilty plea "baseless" as the record indicated the opposite, that counsel represented petitioner with his best interests in mind, while refusing to "acquiesce to the defendant's misguided decision to withdraw his plea ...."  In connection with that claim, the appellate court again found petitioner's claim that his plea agreement was for an eight year sentence was without merit. Finally, the court found petitioner's counsel provided "adequate, effective representation ... [b]ased on the very likely probability that the defendant would have received a longer sentence had he withdrawn his guilty plea ...."   [doc. 5, *State v. Winchester*, No. 2006-KA-0154 (La. App. 1st Cir. 9/20/2006)].

Notice of the First Circuit's Judgment was mailed on September 20, 2006. [rec. doc. 8, Appx. CC].  On October 25, 2006, petitioner sought review in the Louisiana Supreme Court, the filing was postmarked October 5, 2006. [rec. doc. 10].  The Louisiana Supreme Court denied writs without comment on May 11, 2007. [*Id.*, *State v. Winchester*, 2006-KO-2569 (La. 2007).

The instant petition was signed by petitioner on April 5, 2006, and was received and filed by the Clerk of this court on April 6, 2006.   Petitioner asserts the following claims for relief: (1) that petitioner's plea was involuntary because (a) he was led to

11

believe that he would be sentenced to serve eight years to run concurrent with the sentence imposed as a result of the revocation of his probation as reflected in his July 29, 2002 plea transcript and (b) because he was unable to make an intelligent choice as a result of his reduced mental capacity;  (2) that petitioner received ineffective assistance of counsel because he (a) negotiated a plea that petitioner did not fully understand, (b) failed to obtain the services of an independent expert witness to determine petitioner's capacity to stand trial, and (c) failed to file a timely motion to reconsider petitioner's sentence; and (3) that petitioner's plea was unconstitutionally induced because (a) the State never intended to abide by the deal made with petitioner, and (b) because the deal was made at a time when petitioner's sanity was in question despite the fact that the court appointed doctors found petitioner competent because petitioner asserts that those doctors routinely find persons competent and another independent expert would have found differently.[9]

## LAW AND ANALYSIS

### I. Exhaustion and "Technical" Procedural Default

In light of the above, it is clear that petitioner has not properly exhausted several of his claims in the Louisiana state courts, and that those claims are now procedurally defaulted.

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that

---

[9]Petitioner's request to voluntarily dismiss his excessive sentence claim was granted by Order dated October 15, 2007. [rec. docs. 8 and 12].

procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998). Moreover, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court, in a procedurally proper manner, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999) *citing Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5 Cir.2001); *Carter v. Estelle*, 677 F.2d 427, 443

(5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Deter v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). When a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989). In Louisiana, the highest court is the Louisiana Supreme Court. Thus, in order to properly exhaust a claim, a federal *habeas corpus* petitioner must have fairly presented the substance of his claim in a procedurally correct manner to the Louisiana Supreme Court.

In this case, it appears that petitioner attempted to present several of the claims presented herein to the Louisiana Supreme Court in connection with his direct out-of-time appeal. However, the application was not timely filed. Under Louisiana Supreme Court Rule X, §5(a), petitioner had thirty days from the mailing of the Court of Appeals' decision within which to file his petition for *certiorari*.[10] Thus, the thirty day period expired on January 29, 2005. Petitioner's writ application, however, was not metered or signed until June 10, 2005, several months after the limitation period had expired, a fact which petitioner admits in his Amended Petition filed in response to this court's Order requiring petitioner to demonstrate that he timely and properly sought review of each of the claims presented in the instant petition in the Louisiana Supreme Court in a

---

[10]Louisiana Supreme Court Rule X, §5(a) provides in pertinent part, "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the mailing of the notice of the original judgment of the court of appeal ... No extension of time therefore will be granted."

14

procedurally proper manner, and alternatively set forth allegations which demonstrate that federal *habeas* review of his claims is not barred by the procedural default doctrine. [rec. docs. 7 and 8].

In his response to this court's Order, petitioner argues that his pleading to the Louisiana Supreme Court was timely because it was filed within thirty days of the June 3, 2005 evidentiary hearing held in the district court on remand.  That argument is unavailing, however, given the clear and unambiguous time limitation for filing requests for review by the Louisiana Supreme Court set forth in Louisiana Supreme Court Rule X, §5(a) which provides that "An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...." There is no provision, as petitioner suggests, for the filing of an application for review after a ruling by a district court.   Hence, petitioner's claims remain unexhausted, and for purposes of federal *habeas corpus* review, these claims are "technically" procedurally defaulted.

Moreover, it appears that several of petitioner's claims were raised in the Louisiana Supreme Court without first having been properly raised in the Louisiana First Circuit Court of Appeal, and hence, those claims are "technically" procedurally defaulted.   Those claims include petitioner's claims that his plea was involuntary because he believed that he would be sentenced to only eight years[11] and that his plea was

---

[11]In the First Circuit Court of Appeals petitioner argued that his guilty plea was involuntary because the trial court nullified the plea bargain when petitioner was sentenced to consecutive and not concurrent terms.

unconstitutionally induced because the state never intended to abide by the deal it made with petitioner.[12]

A petitioner has "technically exhausted" his federal claims if he fails to properly and timely present them to the Louisiana courts and is thereafter time-barred from seeking relief in the Louisiana courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) *citing Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

Since petitioner failed to timely and properly present his federal *habeas corpus* claims to the Louisiana Supreme Court those claims remain unexhausted, and for purposes of federal *habeas corpus* review, because it is unlikely that petitioner can now meet the exhaustion requirement, those claims are "technically" procedurally defaulted.[13]

---

[12]This claim was arguably raised in the Supreme Court in connection with petitioner's argument that the State breached petitioner's plea agreement.  However, that same claim was not presented to the Louisiana First Circuit Court of Appeal.

[13]Given the extraordinary procedural history of this case, it is not possible to determine with certainty whether or not state court remedies remain available to the petitioner. Clearly, the claims raised by petitioner in the Supreme Court under docket number 05-KH-1898 have been previously raised, *albeit*, improperly, and it is, therefore unlikely that petitioner could raise these same claims anew in post-conviction proceedings.  *See* La.C.Cr.P. art. 930.4. Thus, a protracted review of the availability of remedies serves no useful purpose.

*See Wilder; O'Sullivan*; *Magouirk; Richardson; Mercadel; Dupuy; Coleman; Sones; Bledsue; and Fuller, supra.*

Because petitioner's claims are technically procedurally defaulted, this court may refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review. See *Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, *supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under

17

this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Petitioner has been given an opportunity to demonstrate cause and prejudice for his default.[14] [rec. doc. 7].  However, in response to this court's Order, petitioner has failed to set forth any reason which could arguably constitute cause for his default, instead arguing that his Louisiana Supreme Court writ application was timely (rejected above) and that his claims should be reviewed under the applicable standard of review. [*See* rec. doc. 8].

If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).  Nevertheless, in this case, even if it is assumed that petitioner has shown cause for his default, he cannot show prejudice since he is unable to show that even a properly and timely filed writ application would have resulted in a judgment in his favor because, for the reasons set forth below,  petitioner's claims for *habeas corpus* are patently without merit.

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91

---

[14]On October 25, 2006, the undersigned directed petitioner to "submit a response ... demonstrating that he timely and properly sought review of each of the claims presented in the instant petition in the Louisiana Supreme Court in a procedurally proper manner."  He was also directed to "demonstrate that federal habeas review of [his] claims is not barred by the procedural default doctrine, e.g. facts demonstrating cause and prejudice, a miscarriage of justice, or a specific showing that the procedural bar applied in this case is not strictly or regularly applied by the state court or was misapplied in petitioner's case." [rec. doc. 7].

L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

## II. Rule 4/Merits Consideration

Moreover, even if petitioner's claims were not procedurally barred, petitioner is not entitled to federal *habeas corpus* relief.[15]   Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  *See also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) citing  Rule 4,

---

[15]*See* fn. 13, *supra.*  Further, §2254(b)(2) provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

Advisory Committee Notes ("The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'").

Based on the court's review of the pleadings and exhibits attached thereto, it is alternatively  recommended that the application be summarily dismissed with prejudice because petitioner is not entitled to relief.

### *Validity of Petitioner's Plea*

In his first claim for relief petitioner contends that his plea was involuntary because he was led to believe that he would receive a total sentence of eight years imprisonment in exchange for his guilty plea, and that sentence would run concurrent with the sentence he would receive as a result of the revocation of his probation on prior convictions for simple criminal damage to property and simple burglary.  Petitioner cites the July 29, 2002 plea transcript in support this claim.  However, as noted by both the Sixteenth Judicial District Court and Louisiana First Circuit Court of Appeal, the record provides no support for petitioner's claim.[16]

---

[16] In finding petitioner's ineffective assistance claim that he was "mislead to believe that his sentences on the instant offenses would be capped at eight years" "unsupported by the record" The First Circuit noted as follows: "Prior to accepting the defendant's guilty plea, the trial court personally advised the defendant of the potential penalties for each of the offenses involved. The trial court further explained that the defendant would be exposed to sentences 'up to the maximum allowed by each of those statutes.' The defendant responded affirmatively when the trial court asked if he understood the penalty exposure." [rec. doc. 1-4, pp. 55-56, *State v. Winchester*, 2004-KA-0910 (La. App. 1 Cir. 12/30/2004), 890 So.2d 37 (unpublished)]

During the April 25, 2005 hearing, the district court judge explained that petitioner's plea agreement

Review of the entire plea colloquy establishes that there was no agreement as to the sentence that petitioner would receive in exchange for his guilty plea, petitioner's current unsworn and unsubstantiated allegations notwithstanding.  A defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)  *citing  United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir.1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  *Id. quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).

Review of the entire transcript of the plea colloquy clearly reflects that petitioner was aware of the terms of his plea agreement, including the fact that there was no agreement as to the sentence he would receive.  The court clearly and unambiguously advised petitioner that "any sentence" that petitioner would receive in exchange for his guilty plea would  run concurrent with his eight year sentence imposed under Docket #98-150,349, for which petitioner was on probation.[17]   The court's statement cannot

never called for an eight year total sentence, and that accordingly, if petitioner chose specific performance, the sentence would not be a mere eight years. [rec. doc. 1-7, p. 7-9].

[17] *See* rec. doc. 1-5 at 53-54 wherein petitioner acknowledges his understanding of the terms of the plea agreement as follows:

> Court:  Your agreement with the State is that you're going to enter a plea to attempted armed robbery, two counts, aggravated burglary, and possession of a firearm by a convicted felon. The State would dismiss one count of attempted aggravated burglary and they would not multiple bill you. Any sentence we would give you would run concurrent with the sentence you're on parole for in Docket #98-150,349, which I understand is an eight year sentence. Is that your understanding of the plea agreement?

reasonably be construed as promising petitioner that he would receive a total sentence of eight years on the serious crimes to which petitioner was to plead guilty as petitioner suggests.  As noted above, prior to accepting petitioner's guilty plea, the trial court advised petitioner of the maximum penalties that could be imposed for each crime following acceptance of his guilty plea, namely, no more than forty-nine and one-half years imprisonment for attempted armed robbery,  not less than one nor more than thirty years for aggravated burglary, and not less than ten nor more than fifteen years for the firearms violation.  [doc. 1-5, p. 56-60].  After each explanation of the maximum possible penalty for each crime, petitioner expressly acknowledged his understanding of his potential exposure stating "Yes, sir." [*Id.* at 58, 59 and 60].  Moreover, after the court's explanation and petitioner's acknowledgment of understanding, the court again confirmed "Do you understand the crimes with which you are charged and the penalties that you could possibly get Mr. Winchester?", to which petitioner responded. "Yes, sir." [*Id*. at 60].  Furthermore, prior to accepting petitioner's guilty plea, the court again advised the petitioner, "You authorize the Court to sentence you, Mr. Winchester, up to the maximum allowed by each of those statutes. Do you understand that?"  Petitioner again responded affirmatively,  "Yes, sir."  [*Id*. at. 66].

Clearly, in light of petitioner's responses to the court's inquiries given while under oath at the plea hearing, there is no basis in the record to conclude that petitioner was

---

Petitioner: Yes, sir, that's my understanding.

misled concerning the length of the sentence he would be exposed to following acceptance of his guilty plea.  There is no factual support for petitioner's first claim for relief, and accordingly, this claim must be dismissed as meritless.

Petitioner's second claim directed at the validity of his plea is equally unavailing. Petitioner asserts that his plea was involuntary because he was unable to make an intelligent choice as a result of his reduced mental capacity.  However, the record provides no support for petitioner's claim.  In response to petitioner's Motion for Appointment of a Sanity Commission, both Drs. Analyn Torres and F.H. Metz opined that petitioner possessed the requisite mental capacity to understand the proceedings against him and to assist in his defense. [rec. doc. 1-4 at 8-9, and 18-21].  Thus, the trial court found petitioner competent to proceed. [rec. doc. 8, Appx D].  Further, as noted by the First Circuit, the transcript of petitioner's plea belies any finding of incompetency at the time the plea was entered. [*See* rec. doc. 1-4 at 52-53].   Prior to acceptance of petitioner's plea, the court conducted a thorough examination to determine petitioner's competency and understanding of the charges against him.  Petitioner's responses to the court's inquiries leaves no doubt that petitioner understood both the charges against him and the consequences of those charges, and that he was in fact competent at the time he entered his guilty plea. [see rec. doc. 1-5 at 52-69].

A guilty plea that was not knowingly, voluntarily, and intelligently entered is invalid.  *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).  However,  a federal court will uphold a guilty plea "if it is shown by the record ... that a defendant understood

23

the charge and its consequences when he pled guilty."   *Deville v. Whitley,* 21 F.3d 654,

657 (5th Cir. 1994) *citing Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.), cert.

denied,  474 U.S. 838, 106 S.Ct. 117 (1985); *See also Taylor v. Whitley*, 933 F.2d 325,

329 (5th Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395 (1992).

*Davis v. Butler*, 825 F.2d 892, 893 (5th Cir.1987).  That is the case herein.

For the above reasons, petitioner's claims do not warrant federal *habeas corpus*

relief.

### *Ineffective Assistance of Counsel*

Petitioner alleges that he received ineffective assistance of counsel that petitioner

received ineffective assistance of counsel because counsel negotiated a plea that

petitioner did not fully understand, failed to obtain the services of an independent expert

witness to determine petitioner's capacity to stand trial, and failed to file a timely motion

to reconsider petitioner's sentence.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish

that (1) his attorney's representation fell below an objective standard of reasonableness;

and (2) there is a reasonable probability that, but for counsel's deficient performance, the

outcome of the proceedings would have been different.  *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).  The burden is on the petitioner

to show that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 688.  The court's scrutiny is "highly deferential" and the court must apply a "strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689-90.  See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.

1985).  Thus, this court's review "strongly presum[es] that counsel has exercised

reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir.

1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir.1986).    Moreover, a

*habeas* court must be careful not to second guess legitimate strategic choices made by

defense counsel which under the light of hindsight seem ill-advised and unreasonable.

*Sawyer v. Butler*, 848 F. 2d 582, 587-88 (5th Cir. 1988).

   *Strickland's* prejudice element requires a showing "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.[18] A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir.

2001) citing *Strickland,* 104 S.Ct. at 2068.   A petitioner must affirmatively prove

prejudice.  *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67

F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998).  Self

---

[18]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
   An error by counsel, even if professionally unreasonable, does not warrant
   setting aside the judgment of the criminal proceeding if the error had no effect
   on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

   Defendant must show that there is a reasonable probability that, but for
   counsel's unprofessional errors, the result of the proceeding would have been
   different.  A reasonable probability exists if the probability is sufficient to
   undermine confidence in the outcome.

   When a defendant challenges a conviction , the question is whether there is
   reasonable probability that absent the errors the fact-finder would have a
   reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

In his first claim, petitioner argues that counsel negotiated a plea which petitioner did not fully understand.  However, as is discussed above, the transcript of petitioner's plea demonstrates that petitioner clearly understood the terms and conditions of the plea agreement, the nature of the charges against him and the consequences of the court's acceptance of his guilty plea to those charges.  Furthermore, as is discussed above, the record demonstrates that petitioner was competent at the time his guilty plea was entered. Other than petitioner's conclusory and self serving allegations to the contrary, petitioner offers nothing to suggest that he did not fully understand the plea agreement.  Indeed,

26

those allegations are directly refuted by the record.  During the plea hearing petitioner expressly confirmed that he had discussed the plea with his attorney and that he understood his lawyer's explanation, a fact which the court confirmed directly with petitioner's counsel. [rec. doc. 1-5 at 54].  Petitioner's conclusory and self serving allegations therefore "fall far short of satisfying *Strickland's* prejudice element."  *Sayre*, 238 F.3d at 635.  Accordingly, petitioner's claim is without merit.

Next, petitioner asserts that his counsel was ineffective for failing to obtain an independent expert witness to determine petitioner's capacity to stand trial.  However, as is discussed above, petitioner has offered no evidence to suggest, much less establish, that he lacked capacity to proceed to trial or to enter a valid plea.  To the contrary, the record establishes that both physicians appointed by the court in response to petitioner's Motion requesting appointment of a sanity commission found petitioner was in fact competent to proceed.  [rec. doc. 1-4, at 8-9 and 18-21; rec. doc. 8, Appendix B and C].  Petitioner fails to demonstrate that any additional or "independent" mental health expert would have found differently.  Indeed, given petitioner's appropriate and lucid responses to the court's inquiries during the plea colloquy, it is not likely that this would have occurred.  In sum, there is simply no basis for this court to find that counsel's alleged failure to obtain an "independent" mental health expert to determine petitioner's capacity to proceed in any way prejudiced the petitioner. Since petitioner is unable to demonstrate that counsel's alleged failure resulted in any prejudice, petitioner's second claim for relief

27

fails.[19]

Petitioner's final claim, that counsel's failure to file a Motion to Reconsider his Sentence constitutes ineffective assistance of counsel, is equally without merit.  On direct out of time appeal, appellate counsel raised this claim to ensure that the appellate court would fully review petitioner's sentencing claim. [rec. doc. 1-3 at 6].  However, in the absence of a Motion to Reconsider, the Louisiana First Circuit Court of Appeals nevertheless fully reviewed petitioner's sentence, not once, but twice, the first such occasion resulting in petitioner's being re-sentenced to concurrent rather than consecutive sentences.  Thus, appellate review of petitioner's sentence was in no way limited by counsel's alleged failure.  As such, petitioner cannot demonstrate any prejudice as a result of his counsel's alleged inaction.  Petitioner's claim therefore does not warrant federal *habeas corpus* relief.

### *Unconstitutionally Induced Plea*

In his last claims for relief petitioner asserts that his plea was unconstitutionally induced because the State never intended to abide by the deal made with petitioner, and

---

[19]Although not asserted by petitioner herein, any claim that counsel was ineffective for failing to obtain an expert to determine petitioner's competency at the time of the offense is equally meritless for those reasons found by the First Circuit Court of Appeal, namely, that the decision to abandon an insanity/intoxication defense in favor of accepting a plea agreement was a strategic decision made by both petitioner and his counsel which obviated the need for further evaluation of petitioner's state of mind at the time of commission of the offense, and that given petitioner's detailed statement to police immediately following his arrest outlining how petitioner and his friend orchestrated and carried out the crimes and thereby showing petitioner's specific intent to commit the charged offenses, the decision to abandon an insanity or intoxication defense was a reasonable tactical decision which in no way constituted deficient performance. [rec. doc. 1-4 at 54-55].  Petitioner has failed to show that the State court's decision was contrary to, or an unreasonable application of clearly established federal law, or that the decision was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1) and (2).

because the deal was made at a time when petitioner's sanity was in question despite the fact that the court appointed doctors found petitioner competent because petitioner asserts that those doctors routinely find persons competent and another independent expert would have found differently.

The record establishes that the State did not breach  the plea agreement confected with petitioner. To the contrary, on direct out of time appeal, the State agreed with petitioner's counseled assignment of error, and accordingly, requested that the case be remanded for re-sentencing in accordance with petitioner's plea agreement so that petitioner's sentence be ordered to run concurrent with the time he is serving on his prior offense. [rec. doc. 1-6, at 57-64].  Rather, it appears that the sentencing judge simply forgot the terms of the plea agreement when petitioner's sentence was imposed. However, the sentencing judge's unfortunate lapse of memory, which has resulted in this protracted and convoluted collateral attack, has ultimately been cured and petitioner has been given the exact sentence he bargained for.  Petitioner's claim is therefore without merit.

Finally, for those reasons set forth above, petitioner's second claim for relief fails. It is clear that petitioner's sanity was not in question at the time his plea was entered and there is no evidence to support a finding that another independent mental health expert would have found, contrary to the findings of both doctors who sat on petitioner's sanity commission, that petitioner was not competent to proceed.

Accordingly,

29

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be

**DENIED** and **DISMISSED WITH PREJUDICE** because petitioner's claims are

procedurally defaulted, and alternatively, that this petition be **DENIED AND**

**DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section

2254 Cases in the United States District Courts since it plainly appears from the face of

the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties

aggrieved by this recommendation have ten (10) business days from service of this report

and recommendation to file specific, written objections with the Clerk of Court.  A party

may respond to another party's objections within ten (10) days after being served with a

copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

**proposed legal conclusions reflected in this Report and Recommendation within ten**

**(10) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual**

**findings or the legal conclusions accepted by the District Court, except upon grounds**

**of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415**

**(5th Cir.  1996).**

**THUS DONE AND SIGNED** in Chambers, Lafayette,  Louisiana, this 19th day of

October, 2007.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

31